IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROOSEVELT JOHNSON                    *

                 Plaintiff          *

         vs.                        *    CIVIL ACTION NO. MJG-12-3374

NORFOLK SOUTHERN RAILWAY CO.         *

                 Defendant          *

*        *        *        *        *        *        *        *        *

MEMORANDUM AND ORDER

The Court has before it Defendant Norfolk Southern Railway Company's Motion for Summary Judgment [Document 27] and the materials submitted relating thereto.  The Court finds a hearing unnecessary.


I.    BACKGROUND

At all times relevant hereto, Plaintiff Roosevelt Johnson ("Johnson"), an African-American male, was employed by Defendant Norfolk Southern Railway Co. ("Norfolk Southern") as a locomotive engineer.[1]  Johnson contends that Norfolk Southern discriminated against him on the basis of his race, particularly on September 23, 2011 when he received a 73-day time-served suspension for conduct unbecoming an employee.  He presents

---

[1]    On February 4, 2014, Norfolk Southern terminated Johnson's employment in connection with an incident unrelated to the instant lawsuit.  See [Document 27-6] at 73.

claims in two Counts:

    Count One       Race Based Discrimination (federal claim –
                           Title VII of the Civil Rights Act of 1964,
                           42 U.S.C. § 2000e <u>et</u> <u>seq.</u>)

    Count Two       Intentional Infliction of Emotional Distress
                           (Maryland state law claim)

By the instant Motion, Norfolk Southern seeks summary judgment on all claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.


II.  <u>SUMMARY JUDGMENT STANDARD</u>

A motion for summary judgment shall be granted if the pleadings and supporting documents "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement:  The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  <u>See, e.g.</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-323 (1986);

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).

Thus, in order "[t]o defeat a motion for summary judgment, the party opposing the motion must present _evidence_ of specific facts from which the finder of fact could reasonably find for him or her." Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).  However, "self-serving, conclusory, and uncorroborated statements are insufficient to create a genuine issue of material fact."  Int'l Waste Indus. Corp. v. Cape Envtl. Mgmt., Inc., 988 F. Supp. 2d 542, 558 n.11 (D. Md. 2013); see also Wadley v. Park at Landmark, LP, 264 F. App'x 279, 281 (4th Cir. 2008).

When evaluating a motion for summary judgment, the Court must bear in mind that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).


III. DISCUSSION

A.   Count One – Racial Discrimination Claims

In the Complaint, Johnson alleged that Norfolk Southern

discriminated against him by:

- Failing to approve a request for leave to attend a medical appointment on July 14, 2009, when "White co-workers . . . routinely have days off approved;"

- Failing to adequately address a September 21, 2009 assault on Johnson by a Caucasian employee when "White co-workers are not subjected to such an environment, nor expected to tolerate such behavior;"

- Issuing a "disciplinary letter" to Johnson on March 16, 2011 and failing to investigate the matter, when no "White co-workers have been placed in that position by these supervisors, or similarly disciplined;"

- Issuing a "letter of reprimand" to Johnson on March 30, 2011 without conducting an investigation, when no "White co-workers have been deprived of investigations when they have properly requested the same;" and

- Assessing a 73-day time-served suspension against Johnson on September 23, 2011 for "conduct unbecoming an employee" when "White co-workers have not been similarly sanctioned for behavior that, under Defendant's Rules and Standards, should constitute more major or serious offenses."

Compl. ¶¶ 9-23.

    In the Memorandum of Law Supporting Motion for Summary Judgment, Norfolk Southern asserted that it is entitled to summary judgment on all claims of racial discrimination. See

[Document 27-1].

      1.   <u>Claims Based Upon the Pre-September 23, 2011</u>
<u>Incidents</u>

As to Johnson's claims based upon the incidents occurring

prior to the September 23, 2011 suspension, Norfolk Southern

asserted that:

- Limitations bars the claims based upon the incidents occurring in 2009.[2]

- The March 16, 2011 letter was not an adverse employment action.[3]

- The March 30, 2011 letter was not an adverse employment action.[4]

In his Response to the instant Motion, Johnson did not

respond to, or even address, Norfolk Southern's contentions

regarding these claims of racial discrimination.  <u>See</u> [Document

30].

Johnson's failure to respond to the summary judgment

---

[2]    "Johnson's claims in connection with the two incidents alleged to have occurred in 2009 are barred by the applicable statute of limitation." [Document 27-1] at 2.

[3]    On March 16, 2011, "Johnson was, in fact, not issued a 'disciplinary letter' – he was issued a Letter of Caution, which is not considered to be discipline by Norfolk Southern or pursuant to the agreement between Norfolk Southern and Johnson's union," so he did not suffer any adverse employment action. <u>Id.</u> at 8-9.

[4]    On March 30, 2011, "Johnson was, in fact, not issued a 'letter of reprimand' – he was issued a Letter of Caution . . . which is not considered to be discipline by Norfolk Southern or pursuant to the agreement between Norfolk Southern and Johnson's union," so he did not suffer any adverse employment action.  <u>Id.</u> at 8, 11.

assertions regarding the claims based upon the pre-September 23, 2011 incidents constitutes abandonment of those claims.  See, e.g., Mentch v. E. Sav. Bank, FSB, 949 F. Supp. 1236, 1247 (D. Md. 1997) ("Mentch has abandoned her harassment claim by failing to address that claim in her opposition to ESB's motion for summary judgment, or to offer clarification in response to ESB's reply brief."); see also Grant-Fletcher v. McMullen & Drury, P.A., 964 F. Supp. 2d 514, 525 (D. Md. 2013) ("Mrs. Fletcher appears to have abandoned this argument by not opposing M & D's Motion for Summary Judgment on the issue."); Wood v. Walton, 855 F. Supp. 2d 494, 505 (D. Md. 2012) ("KMGP argues [in its motion for summary judgment] that Wood's negligent supervision claim lacks factual support because there is no evidence that KMGP failed to use proper care in hiring or training Walton.  Because Wood did not respond to this argument, he has abandoned the negligent supervision claim."); Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").[5]

---

[5]     In Custer v. Pan American Life Insurance Co., 12 F.3d 410, 416 (4th Cir. 1993), the court stated: "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" (emphasis added). Here, Norfolk Southern has made the requisite showing.

Accordingly, Norfolk Southern is entitled to summary judgment on the claims of racial discrimination based upon events that occurred prior to the September 23, 2011 suspension.

### 2. The September 23, 2011 Suspension

#### a. The Pertinent Events

On July 12, 2011, at approximately 2:45 AM, Johnson got into an altercation with James Henry, a fellow Norfolk Southern employee, at Norfolk Southern's Enola Terminal in Enola, Pennsylvania. [Document 27-7] at 21.[6] Johnson and Henry, who are both African-American males, were serving as crewmembers on Norfolk Southern Train 400H209. Emery Dep. 58:15-17; [Document 27-7] at 21. Johnson was the Conductor and Henry was the Locomotive Engineer. [Document 27-7] at 24, 26.

The altercation appears to have arisen out of a dispute over having a job briefing and a safety briefing, including, inter alia, whether Henry as the Conductor asked Johnson to have the briefings and had the authority to do so, whether Johnson was required to have the briefings and did so, etc.[7] See id. at

---

[6]    Document 27-7 is a transcript transcribed from a recording of Norfolk Southern's Formal Investigation hearing into the altercation between Johnson and Henry held on September 9, 2011.

[7]    The actual substance of the dispute is immaterial for purposes of resolving the instant Motion for Summary Judgment.

52-75.  Johnson claimed that Henry assaulted him and used racial epitaphs against him.  Id. at 27.

Enola Terminal Trainmaster Jeff Martin ("Martin") overheard the argument between Johnson and Henry while he was speaking with Curtis Gates ("Gates"), a Locomotive Engineer assigned to another train.  Id. at 43.  Martin "heard a bunch of commotion and screaming," but a van prevented him from seeing the altercation.  Id.  Martin walked around the front of the van and observed Johnson coming toward him "yelling that he had been assaulted."  Id. at 44.  According to Martin, "Henry was still approaching . . . Johnson, and there was some strong language used that did sound like Mr. Henry used a racial slur," but Martin "didn't hear the exact words."  Id.  Martin then separated Johnson and Henry.  Id.

Martin's supervisor instructed him to call the Norfolk Southern Police Department.  Id.  Officer Swank arrived at the Enola Terminal to investigate the incident, and Martin informed him that Johnson and Henry had gotten into an argument.  Id. at 28, 44-45.  Officer Swank wrote in his report that when he asked Johnson if Henry had physically assaulted him, Johnson replied that "'he might have poked me only a little bit.'"  Id. at 33.  However, "Henry advised that he had no physical contact with Johnson."  Id.  Johnson told Officer Swank that Henry had used

8

racial epitaphs against him, which Henry denied doing.   Id.

Officer Swank determined that there would be no criminal charges

as a result of the incident.   Id.

Baron Emery ("Emery") was the Baltimore Terminal

Trainmaster at the time of the incident.[8]  After learning about

the incident, Emery traveled to the Enola Terminal to

investigate.   Id. at 27.  He arrived there at 6:20 AM on the day

of the incident.  Road Foreman of Engines Lavar Graham

("Graham") was at the Enola Terminal discussing the incident

with Martin.   Id.  After finishing his investigation, Emery

drove Johnson back to Baltimore.   Id. at 31.  He then contacted

Norfolk Southern's "Crew Call" and had Johnson and Henry

"removed from service pending th[e formal] investigation."   Id.

In a Notice of Investigation letter dated July 22, 2011,

Emery charged Johnson and Henry with "[c]onduct unbecoming an

employee in that you engaged in unprofessional and inappropriate

behavior resulting in unnecessary delay to your assignment."

[Document 27-5] at 37.  Additionally, Emery charged Henry with

"making offensive, inappropriate, and disparaging remarks."   Id.

The letter informed Johnson and Henry that a formal

investigation would be held on August 1, 2011 and that they had

---

[8]    At the time of the July 12, 2011 incident, Johnson was
assigned to Norfolk Southern's Baltimore Terminal.

a right to be represented at the hearing by a union

representative of their choosing.  Id.

The August 1 hearing was postponed because Henry's union

representative was unable to attend.[9]  Emery Dep. 64:19-65:3.  In

a letter dated August 26, 2011,[10] Emery informed Johnson and

Henry that the hearing was rescheduled for September 8, 2011.

_____

[9]    Emery testified that he attempted to call Johnson to inform
him of the postponement, but was unable to reach him.  Instead,
he sent a text message to Johnson informing him of the
postponement because he did not think that a certified letter
would reach Johnson in time.  Emery Dep. 65:4-15.  Johnson
argues that he did not receive notification of the postponement
until sometime after August 26, 2011.  See [Document 30] at 3.
However, at the investigative hearing, Johnson stated that he
did receive a message from Emery regarding postponement of the
August 1 hearing.  See [Document 27-7] at 93.

[10]    Johnson filed a Charge of Discrimination against Norfolk
Southern with the U.S. Equal Employment Opportunity Commission
("EEOC") on August 25, 2011, which he amended on October 17,
2011.  See [Document 27-5] at 34-36.  The EEOC transferred the
case to the Maryland Commission on Civil Rights.  See [Document
27-13] at 1.  On March 20, 2012, after holding a fact finding
conference, the Maryland Commission on Civil Rights notified
Johnson in a letter that it was administratively closing his
complaint against Norfolk Southern due to Johnson's "failure to
cooperate."  [Document 27-5] at 47.  The letter informed Johnson
that he had 15 days to file an objection to the administrative
closure or the complaint would be dismissed and all proceedings
terminated.  Id.  The parties have not indicated whether Johnson
filed such an objection.

Johnson contends that the EEOC issued him a right to sue
letter on August 21, 2012.  Compl. ¶ 35.  Although neither
Johnson nor Norfolk Southern has produced the letter, Norfolk
Southern does not challenge this Court's subject matter
jurisdiction over the instant lawsuit.  Cf. Davis v. N. Carolina
Dep't of Correction, 48 F.3d 134, 140 (4th Cir. 1995) ("[The
U.S. Court of Appeals for the Fourth Circuit] ha[s] long held
that receipt of, or at least entitlement to, a right-to-sue
letter is a jurisdictional prerequisite that must be alleged in
a plaintiff's complaint.").

[Document 27-5] at 38.  Emery testified that the September 8 date was chosen because "[t]hat is when we were able to get a date that was acceptable to the local [union] chairman for Mr. Henry."  Emery Dep. 67:5-12.

The Formal Investigation was held on September 9, 2011[11] before Hearing Officer Brian Keller ("Keller").  Henry was present, along with a union representative.  Johnson was present and stated that he did not desire a union representative to assist him.  [Document 27-7] at 21, 26.  Henry and Johnson testified at the hearing.  Emery, Martin, Graham, and Gates also testified.

In a letter dated September 23, 2011 - two weeks after the investigative hearing - Keller informed Johnson that "[t]he evidence adduced in this investigation clearly proved your responsibility in connection with" the charge of "[c]onduct unbecoming an employee in that you engaged in unprofessional and inappropriate behavior resulting in unnecessary delay to your assignment."  Id. at 133.  Keller assessed Johnson "seventy-three (73) days actual suspension (time served)."  Id.  He assessed Henry the same suspension.[12]  Keller Dep. 65:7-66:1.

---

[11]    After another postponement, provided in a letter dated September 7, 2011 that was hand delivered to Johnson.  [Document 27-5] at 39.

[12]    The parties have not indicated whether Keller found that Henry committed both the "conduct unbecoming" charge and the

Johnson did not appeal his suspension to higher-level Norfolk Southern officers, and therefore, pursuant to the collective bargaining agreement between Norfolk Southern and his union, the 73-day time-served is considered final.  See Emery Dec. ¶ 18; [Document 27-12] at 12.


b.   The Burden Shifting Scheme

A plaintiff's claims of employment discrimination are subject to the burden-shifting scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. See, e.g., O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 309-11 (1996); Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285-88 (4th Cir. 1985).  Thus, the plaintiff first must present a prima facie case of racial discrimination.  Then, "the burden of production shifts to the employer 'to articulate some legitimate, nondiscriminatory reason for'" its action. O'Connor, 517 U.S. at 311 (quoting McDonnell Douglas, 411 U.S. at 802)).  "Once [the employer] meets this burden, [the plaintiff] must prove that [the employer's] proffered reason was mere pretext and that race was the real reason for" the employer's action.  Hawkins v. PepsiCo, Inc., 203 F.3d 274, 278 (4th Cir. 2000).

---

"offensive, inappropriate, and disparaging remarks" charge, or just the conduct unbecoming charge.

To establish a <u>prima facie</u> case of racial discrimination in the enforcement of Norfolk Southern's disciplinary measures, Johnson must prove that:

> (1) that he is a member of the class protected by Title VII,
>
> (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and
>
> (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees.

<u>Cook v. CSX Transp. Corp.</u>, 988 F.2d 507, 511 (4th Cir. 1993).

"Whether a comparator is similarly situated is 'usually a question for the fact-finder,' and summary judgment is appropriate only when 'no reasonable fact-finder could find that plaintiffs have met their burden on the issue.'" <u>Coleman v. Donahoe</u>, 667 F.3d 835, 846-47 (7th Cir. 2012) (citations omitted); <u>see also Reed v. Maryland, Dep't of Human Res.</u>, No. ELH-12-0472, 2013 WL 489985, at *17 (D. Md. Feb. 7, 2013).

"When assessing misconduct, 'precise equivalence in culpability between employees is not the ultimate question.'" <u>Sook Yoon v. Sebelius</u>, 481 F. App'x 848, 850 (4th Cir. 2012) (citation omitted). However, "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." <u>Lightner v. City of Wilmington, N.C.</u>, 545 F.3d 260, 265 (4th

Cir. 2008).   Johnson must show that he is "similar in all
relevant respects to [his] comparator [employees].   Such a
showing would include evidence that the employees . . . 'engaged
in the same conduct without such differentiating or mitigating
circumstances that would distinguish their conduct or [Norfolk
Southern]'s treatment of them for it.'"   Haywood v. Locke, 387
F. App'x 355, 359 (4th Cir. 2010) (citations omitted).

If Johnson succeeds in proving a prima facie case, the
burden shifts to Norfolk Southern to "articulate a non-
discriminatory reason for the difference in disciplinary
enforcement."   Cook, 988 F.2d at 511.   If Norfolk Southern does
so, the burden shifts back to Johnson "to demonstrate that the
employer's reasons are not true but instead serve as a pretext
for discrimination."   Id.

Ultimately, Johnson "always bears the ultimate burden of
proving that [Norfolk Southern] intentionally discriminated
against him."   Id.


c.   The Prima Facie Case

Johnson has identified 10 Norfolk Southern employees who
were charged with conduct unbecoming an employee and in whose
investigation Keller was involved.

Johnson contends that 4 of these employees – J.H. Smith, M.J. Dimaulo, D.M. Piston, and M.C. Huhn – are comparator employees because Keller was "[t]he decision make in each employee's hearing . . . and each employee is subject to the same disciplinary procedures as Mr. Johnson." [Document 30] at 8. Johnson asserts that these alleged comparator employees received lesser punishments than he did due to racial discrimination against him.

The evidence does not clearly indicate that those 4 employees are similarly situated to Johnson for purposes of establishing a prima facie case of racially disparate discipline. For example, Huhn was charged with 4 offenses, including "[c]onduct unbecoming an employee in that you unnecessarily delayed your assignment in an attempt to gain overtime when your train sat idle and you performed no service for approximately 2 hours without a valid reason." [Document 33-1] at 8. However, after the investigative hearing, Keller found that Huhn was liable for the 3 other charges – "[m]aking false and misleading statement to a Carrier Officer . . . ; sleeping while on duty; [and] having your personal cell phone powered on while performing service" – and not for conduct unbecoming. Id. at 10. Thus, Huhn was not disciplined for the same charge that formed the basis of Johnson's suspension.

15

Although Dimaulo, Piston, and Smith were charged with
"conduct unbecoming an employee," their charges arose out of
distinctly different circumstances than did Johnson's charge.
For example, Dimaulo and Piston were charged for "unnecessarily
delay[ing] your assignment in an attempt to gain overtime when
your train sat idle and you performed no service between
approximately 1 1/2 and 2 hours without a valid reason." Id. at
23.  Smith was charged for "engag[ing] in an altercation using
vulgar, unprofessional and inflammatory language in a
threatening manner." Id. at 27.  Johnson's charge was based
upon "engag[ing] in unprofessional and inappropriate behavior
resulting in unnecessary delay to your assignment." [Document
27-5] at 37.

However, the Fourth Circuit has stated that when violation
of a specific rule is the "primary offense" leading to an
African-American plaintiff's discipline and other Caucasian
employees violated the same rule, the other employees "engaged
in conduct of 'comparable seriousness' to that of [the
plaintiff]." Cook, 988 F.2d at 511 ("This finding commendably
reflects an understanding both of the need to compare only
discipline imposed for like offenses in sorting out claims of
disparate discipline under Title VII and of the reality that the
comparison will never involve precisely the same set of work-

related offenses occurring over the same period of time and under the same sets of circumstances.").

Thus, the Court will assume that a reasonable jury could find that at least 3 of the 4 employees identified by Johnson – Dimaulo, Piston, and Huhn – are appropriate comparators and that Johnson could establish a <u>prima facie</u> case of racial discrimination.  Therefore, the burden shifts to Norfolk Southern to articulate a legitimate non-discriminatory reason for its action.

d.   <u>Articulation of Legitimate Non-Discriminatory Reason</u>

Norfolk Southern has articulated a legitimate non-discriminatory reason for the 73-day time-served suspension imposed on Johnson and Henry as a result of the July 12, 2011 incident.

Hearing Officer Keller testified that he assessed the 73-day time-served suspension:

> Because that was how long Mr. Henry and Mr. Johnson had been removed from service until the time frame that I received the hearing transcript back and reviewed the information.

Keller Dep. 65:12-19.  The hearing took place on September 9, and the disciplinary measure was imposed in a letter dated September 23, which is within the range of time required by the

17

collective bargaining agreement between Norfolk Southern and Johnson's union.  See [Document 27-12] at 11 ("If the formal hearing results in assessment of discipline, such decision shall be rendered within fifteen (15) calendar days from the date the hearing is concluded, and the employee will be notified in writing of the reason therefore . . . .").

Keller further explained that he believed the 73-day suspension was appropriate:

> Because of the seriousness of the conduct.
> It is not acceptable to not work as a team
> when engineers and conductors are preparing
> to make a trip across the railroad. . . .
> Our freight trains are out there at between
> 30 and 50 miles an hour next to the Amtrak
> trains going 125 miles an hour and we have
> to ensure that our crews work together on
> that.

Keller Dep. 66:2-15.

The Fourth Circuit has stated that "Title VII is not a vehicle for substituting the judgment of a court for that of the employer." Jiminez v. Mary Washington Coll., 57 F.3d 369, 377 (4th Cir. 1995).  That is, federal courts "'do[] not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination.'" DeJarnette v. Corning Inc., 133 F.3d 293, 298-99 (4th Cir. 1998) (quoting Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997)).

18

> [The] sole concern is "whether the reason for which the defendant discharged the plaintiff was discriminatory. Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."

Id.

Norfolk Southern has articulated a legitimate non-discriminatory reason for the suspension imposed on Johnson even though that suspension is longer than suspensions received by the comparator employees upon whom Johnson relies. Keller assessed the 73-day time-served suspension against Johnson because of the seriousness of the charged offense and the context of the July 12 incident, but also primarily because 73 days was the period of time between July 12, 2011 – the date of the incident when Johnson and Henry were removed from service – and September 23, 2011 – the date of the disciplinary letter.

Therefore, the burden shifts back to Johnson to present evidence to prove that Norfolk Southern's reasons serve only as a pretext for discrimination.

### e.   Proof of Pretext for Discrimination

In his Response to the instant Motion, Johnson alludes to certain procedural irregularities in the investigation into the

July 12, 2011 incident.  See [Document 30] at 2-3.  The September 9, 2011 hearing occurred outside of the time frame outlined in the collective bargaining agreement between Norfolk Southern and Johnson's union.  See [Document 27-12] at 10 ("The notice shall state the date, time and place the hearing is to be held which shall be not less than five (5) days after the date of notification or more than ten (10) days after the date of notification unless otherwise agreed to.").  However, the postponement was due to the inability of Henry's union representative to attend the originally scheduled hearing, Emery Dep. 64:19-65:3, and Johnson did not appeal his suspension to higher-level officials at Norfolk Southern.

Even assuming that the delay amounts to a procedural violation, any alleged procedural irregularities in the investigation are immaterial to the question of whether Norfolk Southern violated Title VII by assessing less severe disciplinary measures against Caucasian employees than against Johnson because of his race.

The Court concludes that Johnson has not presented evidence adequate to permit a reasonable jury to find that the 73-day time-served suspension assessed on September 23, 2011 was an instance of racially disparate discipline in violation of Title VII.

Accordingly, Norfolk Southern is entitled to summary judgment on the racial discrimination claim based upon the September 23, 2011 suspension.

B.   Intentional infliction of Emotional Distress Claim

In the Memorandum of Law Supporting Motion for Summary Judgment, Norfolk Southern asserted that it is entitled to summary judgment on Count Two because there is no evidence to support Johnson's intentional infliction of emotional distress ("IIED") claim.  Norfolk Southern asserted that "Johnson cannot show that Norfolk Southern intentionally engaged in any extreme or outrageous conduct[, that he suffered] any severe emotional distress, or that any conduct by Norfolk Southern caused any severe emotional distress."  [Document 27-1] at 3.

Johnson did not respond to this assertion in his Response to Norfolk Southern's Motion.  See [Document 30].  Hence, as discussed above in regard to the pre-September 23, 2011 discrimination claims, Johnson has abandoned the IIED claim.

Moreover, even in the Complaint, Johnson did no more than present the conclusory statement that he "became physically distraught and sustained shock to his nervous system and suffered emotional distress." Compl. ¶ 39.

Accordingly, the Court will grant summary judgment to

Norfolk Southern on Count Two.


IV.   CONCLUSION

    For the foregoing reasons:

        1.   Defendant's Motion for Summary Judgment [Document 27] is GRANTED.

        2.   Judgment shall be entered by separate Order.


SO ORDERED, on Tuesday, September 16, 2014.


                        /s/
                  Marvin J. Garbis
          United States District Judge